UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARYL LAMAR BERRY,

                Petitioner,         Case No. C18-502-RAJ-JPD

   v.

DONALD HOLBROOK,           REPORT AND RECOMMENDATION

                Respondent.

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Daryl Berry is a state prisoner who is currently confined at the Washington State Penitentiary in Walla Walla, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2014 King County Superior Court judgment and sentence. Respondent has filed an answer to the petition and has submitted relevant portions of the state court record. Petitioner has not filed any response to respondent's answer. This Court, having carefully reviewed petitioner's petition, respondent's answer thereto, and the balance of the record, concludes that petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's convictions as follows:

> Daryl Berry and Jessica Stump were romantically involved for several years and had two children together. Stump testified that her relationship with Berry made her feel the happiest and the worst in her life. While testifying, she recounted an incident where Berry started punching her while driving her and the children. Berry pulled over to the side of the road, ripped her shirt off over her head, and pushed her out of the car. She was left on the side of the road with her children. As a result, she obtained a restraining order against Berry. Stump identified the no contact order admitted at trial as the order she had obtained. After this March 22, 2013 order, she continued to be friendly because they had children together.
>
> Stump had moved to the Burien address in November 2012. This was the residence Stump and her children were living in at the time the court issued the no contact order. Stump testified that Berry did not have a key to the apartment.
>
> On May 2, 2013, Stump was at home when she heard Berry banging loudly on her door for over 45 minutes. When she thought he had finally gone, she prepared to leave the apartment. As she opened the door halfway, Berry struck her, knocking her back to the floor. A struggled [sic] ensued with Stump smashing a picture frame over Berry's head. She was able to open the balcony door and shout outside for help. A passerby dialed 911. Stump's 9-year-old daughter also called 911.
>
> Deputy Sheriff Benjamin Miller responded to the 911 calls. The deputy separated Stump and Berry, who was bleeding from his head. The deputy first spoke with Berry who denied that Stump was the person who had hit him. Berry claimed that the women who had hit him in the head had run off. The deputy then spoke with Stump who was crying and upset. He observed marks on her wrists and a big lump behind one of her ears. Stump told the deputy that Barry [sic] had hit her and that she thought she was going to die. The deputy learned that Stump had a no contact order that Berry had received in open court on March 22, 2013. The deputy arrested Berry.
>
> Berry testified that he had resided with Stump at the apartment. He denied knocking on Stump's door that day and claims that he entered the apartment with his own key. Berry denied hitting Stump and claimed that she had no visible injuries when he left to speak with Deputy Miller. Berry also denied knowing that there was a no contact order prohibiting him from contacting Stump. He denied that the signature on the no contact order was his, although on cross-

REPORT AND RECOMMENDATION - 2

examination he admitted that he had been in court on March 22, 2013, when the order was issued. Berry stated that it was an "Assault IV – wasn't even much a DV [(domestic violence)]."[1] Berry then testified that it was an incident in 2002 that provided a basis for a no contact order, not the one at issue here. Berry then stopped testifying.

A jury found Berry guilty as charged of one count of first degree burglary – domestic violence, based on assault, and one count of felony violation of a no contact order – domestic violence, based on assault. And in a bifurcated trial, the jury found the State had proved the aggravating circumstances that Berry had committed the offenses shortly after being released from incarceration.

(Dkt. 12, Ex. 2 at 1-3.)

## PROCEDURAL BACKGROUND

Petitioner appealed his judgment and sentence to the Washington Court of Appeals. (*See id.*, Exs. 3-6.) On June 15, 2015, the Court of Appeals issued an unpublished opinion affirming petitioner's convictions, but remanding the case for resentencing because the trial court had miscalculated petitioner's offender score. (*Id.*, Ex. 2.)

On July 29, 2015, petitioner filed a petition for review in the Washington Supreme Court. Petitioner identified therein the following issues for review:

1. This Court should grant review and hold the erroneous admission of inflammatory and highly prejudicial prior bad act evidence was not harmless.

2. The trial court erred in permitting the State to amend the information to charge Mr. Berry with first degree burglary.

3. Admission of the 911 recording violated Mr. Berry's Sixth Amendment right to confront his accusers.

4. Mr. Berry was denied his right to interview the complainant, and the trial court erred in not dismissing the case when the complainant did not testify at the time set by the prosecution.

5. Mr. Berry was denied his right to cross-examine the deputy.

---

[1] [Court of Appeals' footnote] 7 Report of Proceedings (RP) at 72.

REPORT AND RECOMMENDATION - 3

    6.       Mr. Berry did not understand the proceedings or the nature of the charges against him.

    7.       Mr. Berry's constitutional right to due process was violated because he was not present for part of the proceedings.

    8.       Mr. Berry received ineffective assistance of counsel because his attorney failed to investigate evidence regarding his mental health.

(Dkt. 12, Ex. 7 at i.) The Supreme Court denied petitioner's petition for review without comment on December 2, 2015, and the Court of Appeals issued its mandate terminating direct review on January 15, 2016. (*Id.*, Exs. 8, 9.)

On January 23, 2017, petitioner filed a personal restraint petition in the Washington Court of Appeals in which he presented a single ground for relief; *i.e.*, the trial court abused its discretion and violated petitioner's due process rights when it failed to follow the procedures set forth in the state's competency statute. (*Id.*, Ex. 10.) The Court of Appeals issued an order dismissing the petition on April 28, 2017. (*Id.*, Ex. 11.)

Petitioner next filed a request for review in the Washington Supreme Court, though he did not identify in his request any specific grounds for review. (*See id.*, Exs. 12, 13.) The Supreme Court issued a ruling denying review on November 20, 2017, and the Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on June 9, 2017.[2] (*Id.*, Exs. 14, 15.) Petitioner now seeks federal habeas review of his judgment and sentence.

## GROUNDS FOR RELIEF

Petitioner presents five grounds for relief in his federal habeas petition which may be summarized as follows:

---

[2] According to respondent, petitioner filed a second personal restraint petition on March 1, 2017, but that petition raised only one claim regarding legal financial obligations and is not relevant to the instant habeas action. (*See* Dkt. 10 at 4 n.2.)

REPORT AND RECOMMENDATION - 4

1. The trial court abused its discretion when it failed to observe competency procedures outlined in RCW 10.77060(1)(a).

2. The trial court erred in adding one point to petitioner's offender score based on petitioner being on community custody at the time of the crime.

3. The complainant was a no-show at the specific time set by the prosecution for a defense interview and to testify at trial.

4. Defense counsel rendered ineffective assistance when counsel became emotional and cried during court proceedings.

5. The admission of evidence of petitioner's prior bad acts violated his due process rights.

(*See* Dkt. 7 at 5, 7, 8, 10 and 12.)

## DISCUSSION

Respondent asserts in his answer to the petition that petitioner properly exhausted some, but not all, of his federal habeas claims. Specifically, respondent asserts that petitioner properly exhausted the part of claim three pertaining to the complainant's failure to appear to testify at trial at the time designated by the prosecution, and claim five. Respondent contends, however, that petitioner failed to exhaust claims one and two, the part of claim three pertaining to the complainant's failure to appear at the time designated for a pre-trial interview, and claim four. Respondent argues that the state courts reasonably denied petitioner's exhausted claims.

### Exhaustion

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the

REPORT AND RECOMMENDATION - 5

requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims. *Id*. "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996).

A habeas petitioner who fails to meet a state's procedural requirements for presenting his federal claims deprives the state courts of the opportunity to address those claims in the first instance. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Presenting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation of the claim for exhaustion purposes. *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

The record makes clear that petitioner's claims regarding the trial court's failure to observe proper competency procedures (ground one), the trial court's improper addition of one point to petitioner's offender score (ground two), the complainant's failure to timely appear for a pretrial defense interview (ground three – part one), and ineffective assistance of trial counsel

REPORT AND RECOMMENDATION - 6

1  (ground four) were never presented to the Washington Supreme Court and therefore have not
2  been properly exhausted.
3        Petitioner presented his first ground for relief to the Washington Court of Appeals in his
4  personal restraint petition. (*See* Dkt. 12, Ex. 10.) After the Court of Appeals dismissed the
5  petition, petitioner submitted a one sentence request to the Washington Supreme Court asking
6  the court to review his statement of additional grounds and "the court appeals below judicial
7  proceeding." (*See id*., Ex. 12.) The Supreme Court, noting the brevity of petitioner's request for
8  review, deemed petitioner's submission inadequate and therefore denied review. (*Id*., Ex. 14.) It
9  thus appears that petitioner failed to fairly present his first ground for federal habeas relief to the
10 Washington Supreme Court for review. Petitioner's first ground for relief therefore has not been
11 properly exhausted.
12       Petitioner's second ground for relief arises out of petitioner's resentencing hearing which
13 occurred after the Court of Appeals, on direct appeal, remanded the case to the trial court for
14 correction of petitioner's offender score. Petitioner apparently never appealed the judgment and
15 sentence entered following his resentencing. Thus, petitioner failed to properly exhaust his
16 second ground for federal habeas relief in the state courts.
17       Petitioner's third ground for relief, concerning the complainant's failure to timely appear
18 for a pretrial defense interview and to timely appear to testify at trial was presented in its entirety
19 in petitioner's statement of additional grounds on direct appeal. (*See id*., Ex. 4.) Petitioner's
20 petition for review on direct appeal is somewhat unclear with respect to this issue as both
21 components of the claim appear in the heading of the claim, though the one sentence argument
22 pertains only to the complainant's failure to timely appear for trial. (*See* Dkt. 12, Ex. 7 at 10.)
23 Arguably, petitioner did present the entirety of his third ground for relief to the states courts.

REPORT AND RECOMMENDATION - 7

What petitioner did not do, however, is allege any federal constitutional basis for the claim in his presentation of the claim to the Washington Supreme Court. To the extent respondent concedes that petitioner exhausted the portion of his third ground for relief pertaining to the complainant's failure to timely appear for trial, the Court is obliged to consider the merits of the claim. However, as petitioner clearly did not present any federal constitutional claim pertaining to the complainant's failure to timely appear for a pretrial defense interview to the state courts, that claim has not been properly exhausted.

Finally, with respect to petitioner's ineffective assistance of counsel claim, the record reflects that petitioner presented an ineffective assistance of counsel claim to the state courts on direct appeal, but the basis of the claim asserted in those proceedings was counsel's failure to investigate evidence of petitioner's mental health which is not the basis of the claim presented in this federal habeas proceeding. Accordingly, petitioner's fourth ground for relief has not been properly exhausted.

Procedural Default

When a petitioner fails to exhaust his state court remedies and the court to which petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review. *Coleman*, 501 U.S. at 735 n. 1.

Respondent asserts that petitioner, having failed to properly exhaust some of his federal habeas claims, would now be barred from presenting those claims to the state courts under RCW 10.73.090 (time bar) and RCW 10.73.140 (successive petition bar). RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Though respondent provides this Court with

no guidance on this issue, the Court presumes that petitioner's conviction became final on July 1, 2016, the date the judgment and sentence was filed following petitioner's resentencing. RCW 10.73.090(3)(a). It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claims. *See* RCW 10.73.090. In addition, because petitioner previously pursued a collateral challenge in the state courts, the state courts are not likely to entertain another such challenge from petitioner. *See* RCW 10.73.140. This Court therefore concludes that petitioner has procedurally defaulted on his first and second grounds for relief, the portion of his third ground for relief pertaining to the complainant's failure to timely appear for a pretrial defense interview, and his fourth ground for relief.

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner makes no effort to show cause or prejudice for his default, nor does he make any showing that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. Petitioner therefore fails to demonstrate that his unexhausted claims are eligible for federal habeas review. Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect to his first and second grounds for relief, the portion of his third ground for relief pertaining to the complainant's failure to timely appear for a pretrial defense interview, and his fourth ground for relief.

REPORT AND RECOMMENDATION - 9

Standard of Review for Exhausted Claims

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

REPORT AND RECOMMENDATION - 10

legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Confrontation Clause

In the exhausted portion of his third ground for relief, petitioner appears to assert that the complainant, Jessica Stump, failed to appear to testify at the specific time set by the prosecution and that the trial court's failure to dismiss the case on this basis constituted a manifest abuse of discretion. Petitioner includes in his statement of facts supporting this claim a reference to *Crawford v. Washington*, suggesting that petitioner may intend to assert a claim arising under the Confrontation Clause even though he offers no coherent argument in support of any such claim. It appears that petitioner's third ground for relief implicates only state law concerns and is therefore outside the purview of this Court on federal habeas review. However, assuming petitioner did intend to assert a Confrontation Clause claim arising out of the complainant's failure to timely appear for purposes of testifying at trial, the Court will briefly address that claim.[3]

---

[3] The Court notes that the Washington Court of Appeals addressed this claim only briefly in its opinion on direct appeal and at no point references any federal constitutional provision(s).

REPORT AND RECOMMENDATION - 11

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI.  In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Nontestimonial hearsay statements, though subject to traditional limitations on hearsay evidence, are not subject to the Confrontation Clause because only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51)).

In this instance, the complainant did appear and testify at trial on the day designated by the prosecutor, albeit an hour or two later than was expected, and petitioner's counsel had the opportunity to cross-examine the complainant.  The failure of the complaining witness to appear at the precise time designated by the prosecutor does not implicate the Confrontation Clause, and petitioner's federal habeas petition should therefore be denied with respect to that claim.

Admission of Bad Acts Evidence

Petitioner asserts in his fifth ground for relief that the trial court erred in admitting evidence of prior alleged assaults by petitioner. (Dkt. 7 at 12.)  The state, during pretrial proceedings, sought to have admitted at trial evidence under ER 404(b) of prior assaults petitioner committed against the victim. (*See* Dkt. 12, Ex. 18 at 34-45.)  The prosecutor argued that the prior assaults were admissible for purposes of assessing the credibility of the complainant. (*See id.*, Ex. 18 at 33-34, 41-42.)  Defense counsel objected to the admission of the prior bad acts evidence, arguing that though the prior incidents may be relevant under existing

REPORT AND RECOMMENDATION - 12

case law, any probative value of the proffered evidence would be outweighed by the risk of unfair prejudice. (Dkt. 12, Ex. 18 at 35-36.)

The trial court ultimately admitted some, but not all, of the proffered evidence.[4] (*Id*., Ex. 18 at 44-45.) The court also agreed to give the following limiting instruction requested by defense counsel: "You may consider testimony from Jessica Stump about alleged prior incidents of violence against her only for the limited purpose of assessing her credibility. You may not consider it for any other purpose. Any discussion . . . during your deliberations must by consistent with this limitation." (*Id*., Ex. 17 at 17, 44.)

Petitioner challenged the admission of the ER 404(b) evidence on direct appeal, though he presented the claim only as a state law evidentiary issue. The state conceded on appeal that the trial court erred in admitting the evidence, but argued that the error was harmless. (*Id*., Ex. 2 at 4.) The Court of Appeals agreed that admission of the challenged evidence was indeed harmless, and explained its conclusion as follows:

> Here, it is reasonably probable that the admission of the prior domestic violence did not materially affect the outcome of the trial. The jury heard from both Stump and Berry as well as the deputy who arrived shortly after the incident. The 911 recording played to the jury captured a frantic female, crying before the police arrived.
>
> Deputy Miller's testimony at trial established that the account Stump gave at the scene was consistent with Stump's testimony at trial. Berry's testimony, on the other hand, was not corroborated. At the scene, he told the deputy it was someone other than Stump who had hit him in the head.
>
> Berry's testimony, unlike Stump's, was replete with contradictions and evasions. Berry claimed he had a key to the apartment and that the police took it. He told the deputy that he knew about the no contact order, but testified that he was not aware of it. The no contact order contained Berry's signature, which was

---

[4] The prosecutor proffered evidence of five prior incidents and the trial court concluded that evidence concerning three of the five prior incidents could come in. (Dkt. 12, Ex. 18 at 34, 44-45.)

REPORT AND RECOMMENDATION - 13

> similar to that found on his driver's license.  There was no evidence that he had a key.
>
> Moreover, Berry's own testimony indicated that he assaulted Stump in 2002.  Further, Berry admitted that he was in court, but that the judge only told him to stay away from Stump and did not tell him that he could not go to the residence.  Given Berry's erratic testimony and Stump's testimony corroborated by the 911 calls and the deputy, there is no reasonable probability that the jury's verdict would have been different had the ER 404(b) evidence not been admitted.  Additionally, because the court gave a limiting instruction on the erroneously admitted ER 404(b) evidence, the jury could only consider it to weigh Stump's credibility, which was supported by the deputy and the 911 calls.  See State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001) (jury presumed to follow the instructions).

(Dkt. 12, Ex. 2 at 3-5.)

It is well established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764 (1990).  The Supreme Court emphasized in *Estelle v. McGuire*, 502 U.S. 62 (1991), that it is not the province of federal habeas courts to re-examine state court conclusions regarding matters of state law and that a federal court, in conducting habeas review "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Id*. at 67-68.  Thus, state court procedural and evidentiary rulings are not subject to federal habeas review unless such rulings "violate[] federal law, either by infringing upon a specific constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  *See also*, *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991) ("the issue for [a reviewing court] always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.")  When considering whether erroneously admitted evidence rendered a trial fundamentally unfair, the federal habeas court must determine whether the error

REPORT AND RECOMMENDATION - 14

"had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

Petitioner asserts for the first time in his federal habeas petition, albeit in a very conclusory fashion, that the admission of the prior bad acts evidence violated the constitution. (*See* Dkt. 7 at 12.)  However, petitioner makes no showing that the evidentiary ruling at issue here implicates federal constitutional concerns.  The transcript of petitioner's trial, which this Court has reviewed in its entirety, amply supports the Court of Appeals' conclusion that there is no reasonable probability that the jury's verdict would have been different had the ER 404(b) evidence not been admitted.  The consistency of the complainant's testimony and the corroboration of that testimony by other evidence presented at trial, the inconsistencies in petitioner's own testimony, and the fact that the trial court gave a limiting instruction regarding the erroneously admitted evidence, readily support the conclusion that the erroneous admission of the ER 404(b) evidence did not have a "substantial and injurious effect or influence in determining the jury's verdict," and therefore did not render petitioner's trial fundamentally unfair. Accordingly, petitioner's federal habeas petition should be denied with respect to his fifth ground for relief.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

REPORT AND RECOMMENDATION - 15

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 8, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 9, 2018.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 18th day of October, 2018.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16